## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE:** | ) | **Bankruptcy No. 09-23155-CMB** |
| | ) | |
| **ROCK AIRPORT OF PITTSBURGH, LLC,** | ) | **Chapter 11** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| **ROCK FERRONE and MARCIA FERRONE,** his wife, | ) | |
| | ) | |
| Plaintiffs, | ) | **Adversary No. 15-2126-CMB** |
| | ) | |
| v. | ) | **Related to Doc. Nos. 1, 7 & 14** |
| | ) | |
| **CLARK HILL THORP REED; WILLIAM C. PRICE; MICHAEL H. WOJCIK; and HUNTINGTON BANCSHARES, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The above-captioned adversary proceeding was commenced by the filing of *Defendants' Notice of Removal* by Clark Hill Thorp Reed, William C. Price, Michael H. Wojcik (collectively referred to as "Clark Hill") and Huntington Bancshares, Inc. ("Huntington," together with Clark Hill, the "Defendants"). The matter presently before the Court is the *Motion to Remand Case* filed by Rock Ferrone and Marcia Ferrone (together, "Plaintiffs"). Upon consideration of the *Defendants' Notice of Removal*, the *Motion to Remand Case*, the response thereto, the briefs filed by the parties, and oral argument held on October 14, 2015, this Court finds, for the reasons expressed herein, that this Court does not possess subject matter jurisdiction, and remand is appropriate. Alternatively, this Court would abstain from hearing this proceeding even if subject matter jurisdiction exists.

Background and Procedural History

On April 30, 2009, Rock Airport of Pittsburgh, LLC ("Rock Airport") commenced the instant bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The filing was authorized by the president and sole member of Rock Airport, Rock Ferrone. Huntington participated in the bankruptcy case as a secured creditor represented by Clark Hill.[1] Approximately five years after the bankruptcy petition was filed, on May 6, 2014, Plaintiffs commenced an action against Defendants in the Court of Common Pleas of Butler County, Pennsylvania ("State Court Action"), by filing only a Praecipe for Writ of Summons, which did not set forth the causes of action. Accordingly, any relationship with the bankruptcy case was not clear at that time. Nearly one year later, Plaintiffs filed a Complaint in the State Court Action. Thereafter, Defendants removed the State Court Action to this Court on June 10, 2015, resulting in Plaintiffs' *Motion to Remand Case* ("Motion to Remand"). In order to resolve the matter presently before the Court, some background of the bankruptcy case during this timeframe is necessary.

In June of 2014, Rock Airport filed its *Amended Plan of Reorganization Dated June 20, 2014* ("Debtor's Plan") in this Chapter 11 case. On July 11, 2014, Rock Airport filed *Debtor's Motion for Entry of an Order Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9019 for Authorization and Approval of a Compromise and Settlement with RPP, LLC, K-Cor, Inc. and the Huntington National Bank, Successor in Interest to Sky Bank* ("Settlement Motion"). *See* Case No. 09-23155, Doc. No. 761. As set forth within the Settlement Motion, certain parties

---

[1]     The Court notes that, within the caption of Plaintiffs' Complaint, Huntington is identified as Huntington Banc[s]hares, Incorporated; however, within the Complaint, Plaintiffs appear to refer to Huntington National Bank, the entity which filed a proof of claim in the bankruptcy case. As it does not appear that the parties are distinguishing between the entities for the purpose of resolving the request to remand, this Court refers generally to "Huntington" throughout this Opinion.

(including Rock Airport; RPP, LLC ("RPP"), a debtor in a related case; Plaintiffs; and Huntington) sought to resolve *numerous* civil actions, including the State Court Action, in an effort to reach a global settlement.[2] Through the Settlement Agreement, Rock Airport would gain Huntington's support for its plan of reorganization. Attached to the Settlement Motion was a copy of the Settlement Agreement, which was unsigned.

As the Debtor, Rock Airport, was a party to the Settlement Agreement and due to the potential impact on the bankruptcy estate, the Settlement Agreement was filed seeking bankruptcy court approval. In fact, the need for bankruptcy court approval is recognized within the terms of the Settlement Agreement:

> This Settlement Agreement shall not become effective unless or until the Bankruptcy Court enters an Order of Court in both the Rock Airport Bankruptcy and RPP Bankruptcy that (i) authorizes *Rock Airport* and *RPP* to execute the Settlement Agreement and (ii) approves the Settlement Agreement in form and substance.

*See* Settlement Agreement, at 7 (emphasis in original). Accordingly, the Settlement Motion was filed and a response deadline and hearing date were set. Notably, Mr. Ferrone filed a pro se objection to the Settlement Motion asserting that he never approved the Settlement Agreement.[3]

---

[2]     By way of background, the Settlement Agreement provided for resolution of pending civil and appellate actions, which were not proceeding in this Court, as follows: (1) appeals filed by Mr. Ferrone and Rock Airport pending in the Superior Court of Pennsylvania with respect to decisions rendered in the Court of Common Pleas of Allegheny County in a case commenced by Mr. Ferrone and Rock Airport in 2007; (2) five civil actions commenced by Huntington pending in the Court of Common Pleas of Allegheny County; and (3) the instant State Court Action.

[3]     Significantly, Mr. Ferrone asserted as follows:

<u>First</u>, the motion does not attach a signed copy of a settlement agreement with the Bank. The motion only attaches an *unsigned* version of the agreement. The settlement agreement is not signed because Ferrone never approved the settlement agreement on behalf of [Rock Airport], as debtor out-of-possession.

*See* Case No. 09-23155, Doc. No. 901, at ¶4 (emphasis in original). Mr. Ferrone continued on to represent that "[n]either Rock Ferrone nor Marcia Ferrone have approved the settlement agreement, in their capacity as individuals." *Id.* at ¶5. The Court notes that a trustee was appointed in this chapter 11 case, and Mr. Ferrone, although involved in negotiations during this time, did not have authority to bind the Debtor's bankruptcy estate.

At the August 21, 2014 hearing, the Settlement Motion was withdrawn. As a result, the Court made no findings with respect to the Settlement Motion or Mr. Ferrone's objections thereto. At no time was the Settlement Agreement approved by this Court.[4]

As of September of 2014, multiple Chapter 11 plans were before this Court: Debtor's Plan, the *Amended Plan of Reorganization Dated July 18, 2014* filed by Management Science Associates, Inc. ("MSA's Plan"), and the *Trustee's Plan of Liquidation Dated September 2, 2014* ("Trustee's Plan"). Ultimately, the Trustee's Plan was confirmed by this Court's Order dated September 16, 2014 ("Confirmation Order"). In light of the confirmation of the Trustee's Plan, the Debtor's Plan and MSA's Plan were rendered moot.

The closing on the sale contemplated by the Trustee's Plan occurred on September 30, 2014. *See Report of Sale*, Case No. 09-23155, Doc. No. 1074. As a result, Huntington received $3,700,000.00 of the sale proceeds. Pursuant to the Stipulated Consent Order dated December 18, 2014 (which became effective December 28, 2014), an additional $625,000.00 distribution was made by the Trustee to Huntington. *See* Case No. 09-23155, Doc. No. 1230. Following said distribution, Huntington waived any claims against the bankruptcy estate of Rock Airport.[5] In addition, the parties to the Stipulated Consent Order (which included the Trustee on behalf of the

---

[4]    Although the removal of the State Court Action was based upon the asserted relation to the bankruptcy case of Rock Airport, not RPP, the Court notes that, on July 11, 2014, RPP also filed in its bankruptcy case *Debtor's Motion for Entry of an Order Pursuant to Bankruptcy Code Section 105(a) and Bankruptcy Rule 9019 for Authorization and Approval of a Compromise and Settlement with Rock Airport of Pittsburgh, LLC, K-Cor, Inc. and the Huntington National Bank, Successor in Interest to Sky Bank, et. al. See* Case No. 13-20868, Doc. No. 342. Said motion was likewise withdrawn on August 21, 2014.

[5]    Notably, the Stipulated Consent Order also provided that " . . . notwithstanding the preceding waiver against the Debtor's Estate, Huntington reserves all rights against third parties for amounts not paid by the Debtor's Estate to Huntington on account of its allowed secured Claim of $4,206,378." In addition to the foregoing, the Court notes that Huntington also filed its *Withdrawal of Claim No. 3-2 Filed by the Huntington National Bank* in the RPP bankruptcy case while similarly reserving and retaining any rights against third parties. *See* Case No. 13-20868, Doc. No. 410.

4

bankruptcy estate) granted Huntington a full release of any and all claims against Huntington related to the bankruptcy case. Accordingly, between Huntington and the bankruptcy estate, it appears that no claims and/or disputes remain.

On April 24, 2015, nearly one year after commencing the State Court Action, Plaintiffs filed their Complaint in that proceeding. Said Complaint consists of four counts: breach of contract against Huntington, breach of contract/lender liability against Huntington, tortious interference with contract against Huntington, and tortious interference with contract against Clark Hill.

On June 10, 2015, Defendants filed the *Defendants' Notice of Removal* ("Notice of Removal") pursuant to 28 U.S.C. §1452(a) and Fed.R.Bankr.P. 9027, asserting that the claims in the State Court Action arise in the bankruptcy case of Rock Airport or, in the alternative, are at least related to the bankruptcy case. The following day, Defendants filed *Defendants' Motion to Dismiss Plaintiffs' Complaint* ("Motion to Dismiss"). On July 1, 2015, Plaintiffs filed a response in opposition to the Motion to Dismiss as well as the Motion to Remand. Thereafter, Defendants filed a response, opposing remand.

On July 21, 2015, a status conference was held on the Notice of Removal and hearings were held on the Motion to Dismiss and Motion for Remand. Following the status conference and hearings, the Court entered an Order (1) holding the Motion to Dismiss in abeyance pending a ruling on the Notice of Removal and Motion for Remand; (2) providing briefing deadlines and issues to be briefed regarding removal, remand, and abstention; and (3) scheduling oral argument. In compliance with the Order, the parties have submitted their briefs. Oral argument was held on October 14, 2015. These matters are now ripe for decision.

Analysis

Defendants removed the State Court Action to this Court pursuant to 28 U.S.C. §1452(a),

which provides, in pertinent part, as follows:

> (a) A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

Accordingly, removal requires an evaluation of jurisdiction pursuant thereto:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

*See* 28 U.S.C. §1334(a), (b). District courts are authorized to refer said cases and proceedings to

bankruptcy courts pursuant to 28 U.S.C. §157(a).[6] Of the four types of matters to which

bankruptcy court jurisdiction extends, (1) cases under title 11, (2) proceedings arising under title

11, and (3) proceedings arising in a case under title 11 are identified as "core" proceedings. *See*

*Binder v. Price Waterhouse & Co., LLP* (*In re Resorts International, Inc.*), 372 F.3d 154, 162

(3d Cir. 2004). With respect to these three types of proceedings, bankruptcy courts possess full

adjudicative power. *See id.* To the contrary, with respect to proceedings merely "related to" a

case under title 11, identified as "non-core" proceedings, bankruptcy courts are limited to

submitting proposed findings of fact and conclusions of law to the district court. *See id.*

---

[6]    Although this action was removed directly to this Court as opposed to the District Court, it does not appear to be reason for objection due to the District Court's standing order of reference to this Court (pursuant to which cases  under Title 11 and proceedings arising under Title 11 or arising in or related to a case under Title 11 are referred to the bankruptcy judges of this district for consideration and resolution) and for the reasons set forth in *Geruschat v. Ernst Young LLP* (*In re Seven Fields Development Corp.*)*,* 505 F.3d 237, 247 n.8 (3d Cir. 2007).

Distinguishing between core and non-core proceedings, however, is not necessary for resolving the question of subject matter jurisdiction. *See id.* at 163.

When the removal of an action is challenged, the removing party bears the burden of establishing that removal was proper, which includes demonstrating that the court has jurisdiction. *See Falck Properties, LLC, v. Parkvale Financial Corp. (*In re Brownsville Property Corp.*), 469 B.R. 216, 223 (Bankr.W.D.Pa.2012). For the purpose of determining subject matter jurisdiction, this Court need only find that the causes of action removed to this Court are "related to" the bankruptcy case, i.e., the broadest means of establishing bankruptcy jurisdiction. *See Geruschat v. Ernst Young LLP (*In re Seven Fields Development Corp.*), 505 F.3d 237, 257 (3d Cir. 2007). However, any doubt regarding removal is to be resolved in favor of remand. *Falck Properties*, 469 B.R. at 223.

Although a court may possess jurisdiction, remand and/or abstention may nonetheless be appropriate. Whether a matter is core or non-core is relevant to the determination. Mandatory and permissive abstention are provided for in 28 U.S.C. §1334(c):

> (c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.
> (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

In addition, 28 U.S.C. §1452(b) provides that a court may remand a removed claim or cause of action on any equitable ground.

Within the Notice of Removal, Defendants contend that each of the claims in the State

Court Action arise in the bankruptcy case of Rock Airport and could only arise in the context of

the bankruptcy case; in particular, Defendants identify the claims as core claims pursuant to 28

U.S.C. §157(b)(2)(A) and (O).[7] *See* Notice of Removal, at ¶¶22, 32. In the alternative,

Defendants contend that the claims are, at least, related to the bankruptcy case on the basis that

the claims could have some effect on the estate. *See* Notice of Removal, at ¶27. To the contrary,

Plaintiffs contend that the State Court Action is not core and "is not sufficiently related to the

Rock Airport bankruptcy case." *See* Motion for Remand, at ¶¶17, 21. Accordingly, Plaintiffs

seek remand so that the case can proceed in State Court.[8]

This Court must be satisfied that it *at least* possesses "related to" jurisdiction in order to

retain the State Court Action. The Third Circuit set forth the applicable test in *Pacor, Inc. v.*

*Higgins*, 743 F.2d 984 (3d Cir. 1984), which has been applied as follows:

> Under *Pacor*, bankruptcy courts have jurisdiction to hear a proceeding if "the
> outcome of that proceeding could conceivably have any effect on the estate being
> administered in bankruptcy." *Id.* In *In re Marcus Hook*, 943 F.2d 261, we
> emphasized that a key word in this test is "conceivable" and that "[c]ertainty, or
> even likelihood, is not a requirement." *Id.* at 264. In *Pacor*, we observed: "[T]he
> proceeding need not necessarily be against the debtor or against the debtor's
> property. An action is related to bankruptcy if the outcome could alter the debtor's
> rights, liabilities, options, or freedom of action (either positively or negatively)
> and which in any way impacts upon the handling and administration of the
> bankrupt estate." 743 F.2d at 994. The Supreme Court has explained that the
> critical component of the *Pacor* test is that "bankruptcy courts have no

---

[7]       Specifically, §157(b)(2)(A) and (O) identify the following as core proceedings: "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims[.]"

[8]       As an additional argument within the Motion for Remand, Plaintiffs asserted that the Notice of Removal was untimely; however, Plaintiffs appear to have abandoned this contention. *See Plaintiffs' Brief in Support of Motion to Remand Case to State Court*, Doc. No. 28, at 12 ("Timeliness under Bankruptcy Rule 9027 is not an issue."). Accordingly, the issue of timeliness will not be addressed herein.

> jurisdiction over proceedings that have no effect on the estate of the debtor."
> *Celotex*, 514 U.S. at 308 n. 6, 115 S.Ct. 1493.

*Resorts International*, 372 F.3d at 164. However, the Complaint in the State Court Action was filed post-confirmation. In both *Resorts International* and *Seven Fields* the Third Circuit addressed "related to" jurisdiction specifically in the post-confirmation context. As noted in *Seven Fields*, in light of the fact that the confirmation of a plan generally vests all of the property of the estate in the reorganized debtor, application of the *Pacor* test proved problematic as the debtor's estate could no longer be affected; instead, the test to be applied post-confirmation addressed whether there was a close nexus to the bankruptcy case, such as a matter affecting "interpretation, implementation, consummation, execution, or administration of the confirmed plan . . . ." *See* 505 F.3d at 258. In this case, however, the Trustee's Plan of liquidation provides as follows:

> On the Effective Date, the assets of the Estate shall remain property of the Estate and not released from the custody and jurisdiction of the Bankruptcy Court. From and after the Effective Date, the Trustee may dispose of assets of the Estate in accordance with this Plan, the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of the Plan. Upon issuance of a Final Decree, any property of the Estate not disposed of by the Trustee, shall be deemed abandoned.

*See* Trustee's Plan, Case No. 09-23155, Doc. No. 962, Article XII, §12.01. Nonetheless, application of the close nexus test would not change the Court's decision with respect to its jurisdiction.

The analysis of whether this Court possesses "related to" jurisdiction of this removed action begins with a review of the Complaint, which alleges that the Defendants' actions resulted in a loss of Plaintiffs' investment in the "Rock Airport Project" totaling over $60 million. The Complaint contains a variety of allegations against the Defendants over a span of time dating long before the commencement of Rock Airport's bankruptcy case through 2015.

Count I alleges breach of contract against Huntington, specifically asserting that Huntington breached its July 2014 agreement with Plaintiffs by (1) refusing to sell a portion of its claim in the bankruptcy case to another entity; (2) failing to vote in support of the Debtor's Plan; and (3) voting, instead, in favor of the Trustee's Plan.

Count II alleges breach of contract/lender liability against Huntington with respect to loan and security agreements *between Plaintiffs and Huntington*, pursuant to which the latter loaned money to Rock Airport. Plaintiffs assert that Huntington violated an implied covenant of good faith and fair dealing under Pennsylvania law by the following: (1) freezing the Plaintiffs' personal bank account; (2) attending certain meetings in an alleged effort to assist another entity in acquiring property from Rock Airport; (3) supporting the Trustee's Plan; and (4) causing another entity not to provide financing to Rock Airport in 2014.

Count III alleges tortious interference with a contract against Huntington. Plaintiffs assert that *Mr. Ferrone entered into an oral agreement with another entity* pursuant to which the latter agreed to provide financing to Rock Airport. Plaintiffs contend that Huntington interfered with the agreement such that the financing was not provided.

Count IV alleges tortious interference with a contract against Clark Hill. Plaintiffs contend that, in July of 2014, Huntington entered into a settlement agreement with Plaintiffs, pursuant to which Huntington agreed to sell a portion of its claim and vote the remaining portion in favor of the Debtor's Plan. Plaintiffs contend that Clark Hill caused Huntington to breach that agreement.

Defendants contend that, not only does this Court possess subject matter jurisdiction, this removed action is a core proceeding as it "arises in" the bankruptcy case. Specifically, Defendants contend that Plaintiffs' claims are interwoven and inseparable from this Court's

10

orders, requiring interpretation and enforcement of said orders. Further, Defendants assert that Plaintiffs are, in effect, challenging the sale of Rock Airport's assets in the bankruptcy case pursuant to the Trustee's Plan. Notably, however, the parties to the State Court Action are non-debtors and the relief sought by Plaintiffs is an award of monetary damages without any apparent effect on the bankruptcy estate or Rock Airport.

Counts I and IV are related to an alleged settlement between Plaintiffs and Huntington. Plaintiffs contend Huntington breached that agreement and further that said breach resulted from the alleged tortious interference by Clark Hill. In support of these allegations, Plaintiffs refer to a number of emails in addition to the same Settlement Agreement previously submitted to this Court for approval through the Settlement Motion. *See* Complaint, at ¶¶58, 77 and Exhibits D and E to Complaint. Said motion was withdrawn; thus, the Settlement Agreement was never approved by this Court. *See* Text Order at Case No. 09-23155, Doc. No. 928 ("Matter moot; Motion withdrawn."). This Court made no rulings with respect to any agreement between Plaintiffs and Defendants such that interpretation by this Court is required. Plaintiffs do not seek to enforce the unapproved, unsigned Settlement Agreement against Rock Airport and the bankruptcy estate, nor could they seek to do so given that approval was not obtained. While the obligations allegedly created by the Settlement Agreement were to be accomplished within the framework of the bankruptcy case, Plaintiffs do not seek to compel compliance. Plaintiffs simply seek an award of monetary damages. *Even if* the State Court found that Huntington did agree to transfer a portion of its claim and vote in favor of Debtor's Plan, the alleged breach does not impact the Orders of this Court. The Debtor's Plan is no longer before the Court, and the Trustee's Plan was confirmed prior the filing of the Complaint.

Defendants place significant weight on the reasoning in *Falck Properties*; however, the facts are distinguishable. In *Falck Properties*, a review of the allegations within the complaint revealed that the claims were mostly, if not entirely, dependent upon the bankruptcy court's prior orders. *See* 469 B.R. at 223. In that case, the only contract between the parties with respect to the breach of contract claim was formed in the bankruptcy court's presence and memorialized in its order. *Id.* Further, the monetary damages sought were only for the alleged breach of contract, and the items set forth in the complaint were directly related to the court's orders or flowed from the orders. *Id.* at 224. In this case, Defendants allege, but fail to demonstrate, how the allegations within the Complaint require interpretation or examination of prior Orders of this Court. While the Settlement Agreement was brought before this Court by way of the Settlement Motion, no ruling was made with respect to the agreement as the motion was withdrawn from consideration. This Court finds that the Text Order relating to the matter requires no interpretation. With respect to allegations that the State Court Action constitutes a collateral attack on Orders of this Court, simply stating that to be so is insufficient for the purpose of establishing jurisdiction. Moreover, despite Defendants' contention that the intent of the State Court Action is to challenge the sale of Rock Airport's assets, it is not clear how the outcome of the State Court Action could achieve such a result.[9] In light of the foregoing, Defendants failed to establish how rulings on Counts I and IV could alter Rock Airport's rights, liabilities, options, or freedom of action and implicate the administration of this bankruptcy estate. Accordingly, the Court finds that it lacks even "related to" jurisdiction over these matters.

With respect to Counts II and III, the Court's analysis is even more straightforward. Count II alleges breach of contract/lender liability against Huntington with respect to loan and

---

[9]   It is telling that neither the Chapter 11 Trustee nor Debtor's counsel has participated in this adversary proceeding.

security agreements *between Plaintiffs and Huntington*. Similarly, Count III is based upon the alleged existence of an agreement *between Mr. Ferrone and another entity*. While *some* of the supporting factual allegations took place during the time of the bankruptcy case, Defendants failed to establish any potential impact on Rock Airport and the bankruptcy estate. To the extent these Counts related to potential funding or support for Debtor's Plan, said Plan is not before the Court and was rendered moot by confirmation of the Trustee's Plan. Accordingly, this Court lacks jurisdiction over these matters.

Undoubtedly, there was much activity behind the scenes while competing plans were pending before this Court. This is common practice in bankruptcy cases. The fact that certain parties were at least attempting to negotiate settlements and obtain support for particular plans is evident by the filing of the Settlement Motion. The instant dispute, however, is not raised in the context of the plan confirmation proceedings and appears to have only an attenuated relationship with this bankruptcy case as it provides *some* of the factual backdrop to Plaintiffs' claims.[10] Furthermore, by the time the Complaint was filed, all claims between the estate and Huntington had been resolved. Therefore, this Court will remand this proceeding as the Court lacks jurisdiction.

Moreover, *even if* this Court possessed "related to" jurisdiction, abstention and remand would nonetheless be appropriate. Relevant to this determination is Defendants' contention that the State Court Action constitutes a core proceeding "arising in" the bankruptcy case. This Court

---

[10]    *Cf. In re Velocita Corp.*,169 F. App'x 712, 717 (3d Cir. 2006) (finding "related to" jurisdiction because the outcome of the action could have affected fee applications and confirmation of a plan). In *Velocita*, the complaint was filed while objections to plan confirmation and fee applications were pending in the Chapter 11 case. *Id.* at 715. The allegations of the state court action resembled those made in bankruptcy court proceedings. *Id.* at 714. The court found the potential effect on estate administration to be substantial as the matters involved significant fee applications and plan disputes. *Id.* at 715-16. In contrast, the timing of events in this case is much different. The Complaint in the State Court Action was filed on April 24, 2015, long after the Trustee's Plan was confirmed on September 16, 2014.

disagrees. As set forth in *Stoe v. Flaherty*, "claims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *See* 436 F.3d 209, 218 (3d Cir. 2006). Although two of the three agreements referenced in the Complaint (the Settlement Agreement and the alleged oral agreement with a separate entity) were asserted to have been formed during the pendency of the bankruptcy case, an alleged breach of said agreements does not invoke substantive provisions of the Bankruptcy Code nor are these the types of claims that can only be entertained in bankruptcy.[11] While a dispute over a settlement agreement approved under Fed.R.Bankr.P. 9019 may provide a basis for finding "arising in" jurisdiction, no such agreement is at issue in this case as the Settlement Motion was withdrawn. Accordingly, a decision to abstain and remand the State Court Action would be based upon "related to" jurisdiction as opposed to "arising in" jurisdiction.

Assuming *arguendo* that the State Court Action is related to the bankruptcy case of Rock Airport for the purpose of establishing subject matter jurisdiction, 28 U.S.C. §1334(c)(2) applies. Pursuant thereto, if Plaintiffs' state law claims and causes of action can be timely adjudicated in the state forum, then this Court shall abstain. No basis has been presented upon which this Court could find that the State Court Action would not be timely adjudicated in the state forum. Accordingly, abstention and remand are appropriate on the facts presented.

---

[11]     *Stoe* was applied as follows by the court in *In re Velocita Corp.*, addressing a negligent misrepresentation action filed by Construction Management & Inspection, Inc. ("CMI") against debtor's bankruptcy counsel:

> We held in *Stoe* that "claims that 'arise in' a bankruptcy case are claims that by their nature, *not their particular factual circumstance,* could only arise in the context of a bankruptcy case." *Id.* at 211 (emphasis added) (citations omitted). While there are some factual connections between CMI's claim and the Chapter 11 proceedings, *Stoe* directs us to ignore these connections, and therefore view CMI's suit as a generic negligent misrepresentation action. Because negligent misrepresentation claims certainly can occur outside the context of bankruptcy, "arising in" jurisdiction does not exist here.

*See* 169 F.App'x 712, 715 (3d Cir. 2006).

<u>Conclusion</u>

Therefore, based upon the foregoing, this Court finds that, in the absence of jurisdiction, remand is appropriate. Furthermore, even if this Court had jurisdiction, abstention and remand would nonetheless be appropriate pursuant to 28 U.S.C. §1334(c)(2). Accordingly, the pending Motion to Dismiss will not be addressed by this Court as it is a matter to be resolved in the remanded action in the appropriate forum. An Order will be entered consistent with this Memorandum Opinion.

Dated: October 27, 2015                                      __/s/ Carlota M. Böhm_____
                                                            Carlota M. Böhm
                                                            United States Bankruptcy Judge

**MAIL TO:**

John R. O'Keefe, Esq.                          FILED
                                               10/27/15 2:23 pm
Rock and Marcia Ferrone                        CLERK
1170 Industrial Boulevard                      U.S. BANKRUPTCY
New Kensington, PA 15068                        COURT - WDPA